IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KENNETH W. RUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV144 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kenneth W. Ruff ("Plaintiff"), *pro se*, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on May 4, 2015, alleging a disability onset date of January 8, 2015. (Tr. at 10, 147-48.)[1] His claim was denied initially (Tr. at 52-60, 70-73), and that determination was upheld on reconsideration (Tr. at 61-69, 79-83). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 84-85.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on October 4, 2017. (Tr. at 10.) The ALJ

---

[1] Transcript citations refer to the Administrative Record [Doc. #11].

ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 18), and, on December 14, 2018, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

[ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 8, 2015, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> inflammatory vs. rheumatoid arthritis; degenerative joint disease of the knees; degenerative joint disease of the left wrist; and hypertension[.]

(Tr. at 12.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 12-13.) Therefore, the ALJ assessed Plaintiff's RFC and found that he could perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> He can occasionally climb ramps and stairs. He can occasionally kneel, crawl, or crouch. He can occasionally stoop or balance. He cannot climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to hazards. He can occasionally use foot pedals. He can frequently handle or finger. He can frequently reach overhead.

(Tr. at 13-14.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 17.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 17-18.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 18.)

As noted above, the present action for judicial review has been brought by the Plaintiff *pro se*. This Court is required to construe such *pro se* pleadings liberally and will consider the claims fairly encompassed in Plaintiff's arguments. Erickson v. Pardus, 551 U.S. 89, 94 (2007). In his two-page "Motion for Judgement," Plaintiff sets out his contentions as follows:

> I had to come out of work in January 2015 per my physician's recommendation due to being diagnosed with Rheumatoid Arthritis/Osteoarthritis which prevents me from completing tasks on a daily basis like I once did due to the severe pain that [is] associated with the chronic disease that I have been diagnosed with. Now, there are times when I am in so much pain where I cannot hardly get out [of] bed and move around and there are also days when I have to use a cane just to move around and then the pain is still unbearable to the point where I am in tears. At the present time I am seeing Dr. Gay who is a rheumatoid arthritis specialist at Thomasville Family Practice and I am also seeing Dr. Dellinger for this condition, but as of right now I cannot even get seen due to no health insurance or money to pay for the doctor visit which prevents me from getting the necessary help for this chronic condition or medication for pain.
> . . . .
> I really need to see [these] physicians so I can get the proper treatment that [I] need[] for my condition because I have not been to the doctor in over a year and I also need[] insurance so I can get to the doctor, hospital, and other medical facilities that I may be referred to and also I need to get the necessary medication so the pain will not be as much as it is right now but without finances this cannot take place which will cause me to continue suffering. Also, I have also applied for Medicaid and continue to be denied but again I need some type of medical insurance.

6

> Finally, my claim is that I was wrongfully denied and that my case was not thoroughly reviewed due to my chronic medical conditions that prevents [sic] me from doing normal daily activities and that the information that has been previously submitted to the Social Security Administration concerning my chronic illness was enough to consider me for Social Security Disability and the allegations of error is the denial of my Social Security claim by the Commissioner of Social Security.

(Pl.'s Mot. [Doc. #15] at 1-2.) Plaintiff concludes that he hopes the Court will "take what [he has] said into consideration and approve [his] disability claim." (Id. at 2.) However, as explained above, the approval of Plaintiff's claim is beyond the Court's scope of review. Instead, the Court must determine whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Act during the time period at issue in this case, which extends from Plaintiff's alleged onset date, January 8, 2015, to the date of the ALJ's decision, February 13, 2018.[4]

The more specific contention Plaintiff raises before the Court is whether his case was "thoroughly reviewed" by the ALJ. (Pl.'s Mot. at 2.) However, Plaintiff provides no details as to which evidence the ALJ failed to properly review. Moreover, the ALJ's decision reflects a thorough review of the record, and the Court has likewise reviewed the record and finds that substantial evidence supports the ALJ's RFC finding and her decision as a whole. Notably, Plaintiff's contention of error appears to focus on the ALJ's alleged failure to properly evaluate the limiting effects of his arthritis, which the ALJ found to be a severe impairment at step two of the sequential analysis. Plaintiff essentially contends that substantial evidence fails to

---

[4] As a preliminary matter, much of Plaintiff's motion describes the current state of his impairments, including his increased pain due to his lack of treatment and pain medications. To the extent Plaintiff contends that his impairments have worsened since February 13, 2018, the Court notes that Plaintiff may file a new application for DIB alleging an onset date on or after February 14, 2018. Depending on his income level, Plaintiff may also qualify to file an application for Supplemental Security Income ("SSI") under Title XVI of the Act.

7

support the ALJ's evaluation of his subjective complaints. The Court construes this claim as a challenge to the ALJ's evaluation of Plaintiff's subjective complaints of pain.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (emphasis omitted) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including a claimant's statements about pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [the] ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which a claimant's pain or other symptoms limit the ability to perform basic work activities. Relevant evidence for this inquiry includes a claimant's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

8

(i) [Claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or [has] taken to alleviate [his] pain or other symptoms;

(v) Treatment, other than medication, [claimant] receive[s] or [has] received for relief of [his] pain or other symptoms;

(vi) Any measures [claimant] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard a claimant's testimony and observed his demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ noted that Plaintiff testified that he experienced arthritis pain in his legs, arms, wrists, knees, and back. (Tr. at 14, 36-37.) He further testified that the pain "comes and goes" and is sometimes helped by pain medication. (Tr. at 14, 36-38.) In terms of activity, Plaintiff stated that he can walk for approximately 15 minutes at a time, sit for about 15 minutes before needing to stand, stand for about 20 minutes, has no problems with lifting, and can lift 20 pounds. (Tr. at 14, 38, 40.) He described his back and knee pain as worse when transitioning from laying down to standing up and often subsiding within a minute of standing. (Tr. at 14, 39.)

While the ALJ found that Plaintiff's arthritis "could reasonably be expected to cause some of the alleged symptoms," she also found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 14.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [the] ability to work" and "[a]lthough a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [ ]he suffers." Hines, 453 F.3d

at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities. . . ."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically identified multiple reasons supporting her determination.

In particular, the ALJ noted Plaintiff's reported ability to drive, shop, attend church, and visit friends, perform "household chores, such as cleaning and laundry," help care for his paralyzed mother on a limited basis, and walk his dog twice a day with occasional breaks. (Tr. at 14, 15, 16, 17, 41-42, 241.) The ALJ found that Plaintiff's ability to perform these activities indicated that his arthritic pain was not as debilitating as he alleged. (Tr. at 14, 17.)

The ALJ also considered Plaintiff's treatment records. The ALJ recounted that, as of January 2015, his alleged onset date, Plaintiff's primary care physician Dr. Dellinger noted that Plaintiff's knees had crepitus with some posterior swelling consistent with popliteal cysts,

11

along with reported bilateral knee pain. (Tr. at 14, 237-238.) Dr. Dellinger "noted that he would place [Plaintiff], whose job required him to do a lot of walking and climbing up and down ladders, on disability for six months." (Tr. at 14-15 (citing Tr. at 237, 274).) Significantly, the ALJ concluded that in rendering his opinion that Plaintiff was unable to work, Dr. Dellinger appeared to find that Plaintiff was unable to "perform the duties of a cleaner of sanitation machines," rather than unable to perform work in general. The ALJ also considered at length Plaintiff's treatment by his rheumatologist, Dr. Gay, throughout the time period at issue.

> In February, the claimant visited Dr. Gay, a rheumatologist, for monitoring of his arthritis. The claimant reported that the pain in legs went from his knees downward, that standing and walking worsened the pain, and that sitting improved the pain. He also reported that the morning stiffness in his hands lasted for a brief period. Dr. Gay noted that his rheumatoid arthritis was being treated with leflunomide and Humira, and that he was not experiencing any side effects from the medication. His assessment was that the claimant's disease was under "reasonably good control."
>
> In May, Dr. Gay noted the claimant was not in any acute distress. He noted that x-rays showed moderate medial compartment narrowing in his knees. He also noted that the claimant was "still having some pain in his knees down into his calves," but that he had not had reported any pain in his hands. He further noted that claimant had suffered some pain in his left wrist during the past week, and that he had experienced some intermittent pain in his left shoulder. The claimant reported that he sometimes had to take a break when walking his dog. Dr. Gay's assessment was that the claimant had advanced arthritis of the left wrist, and that he probably would be unable to return to his previous job. In December, Dr. Gay noted the claimant had recently experienced swelling in his wrist. He also noted the claimant's morning joint stiffness lasted for about ten minutes. He further noted that the claimant was taking Meloxicam, Cymbalta, and Norco for his pain without side effects. As for the examination of the claimant's arms, Dr. Gay noted that he exhibited a significant loss of range of motion in his left wrist, but that his right wrist was normal. He noted the claimant had swelling of the third interphalangeal joint in both hands. As for the claimant's knees, he noted the claimant had mild crepitus but a normal range of motion in his right knee; his left knee exhibited a decreased range of motion,

in that there was a mild loss of flexion with mild to moderate crepitus. The
range of motion in his ankles was normal. In April 2016, Dr. Gay noted:

> He is doing somewhat better as far as his legs go. His legs have not been
> hurting as much, and he has been able to walk better. He is having trouble
> with his fingers this morning. His wrists have been doing fine lately. He
> has not noticed any problems with swelling in his wrists lately.

Dr. Gay also noted the claimant was taking one to four Norco tablets and four
Aleve tablets per day for pain control. He further noted the claimant was no
longer taking Humira due to his lack of health insurance. Dr. Gay's assessment
of the status of the claimant's arthritis was "no significant disease activity seen
today off of Humira." In December, he noted the claimant had occasional but
not persistent swelling in his hands. He also noted the claimant was taking two
hydrocodone tablets per day. In August 2017, he described the claimant's
musculoskeletal status as follows: "He reports that his hands and feet are not
giving him any problems. His right knee is still bothering him as well as his
lower back."

(Tr. at 15 (internal citations omitted) (citing Tr. at 241, 242, 244, 246, 257, 278, 285, 292, 294, 321, 327, 333, 337, 340, 342, 347, 348, 356.) The ALJ gave great weight to Dr. Gay's statement that Plaintiff "probably could not return to his past work as a cleaner of sanitation machines." (Tr. at 15, 244.) In making this determination, the ALJ noted that "it is a reasonable conclusion in light of Dr. [Gay's] findings regarding [Plaintiff's] impaired third fingers, left wrist, and left knee, and in light of his need to use Norco to manage his pain." (Tr. at 16.)

The ALJ also considered the assessment of the State agency medical consultant, Dr. Song, who opined that Plaintiff could perform the full range of light work. (Tr. at 16.) The ALJ gave partial weight to this opinion but concluded that Plaintiff required further limitations in light of Dr. Gay's findings. In fact, Plaintiff's RFC, as written, encompasses nearly all of the limitations proposed by Plaintiff's testimony and the medical records, including not only a limitation to light work, encompassing significantly less strenuous jobs than Plaintiff's

previous, medium level work, but also myriad postural and manipulative limitations to account for Plaintiff's pain and limited range of motion in his left knee, left wrist, and hands.

Plaintiff does not specify what, if any, additional restrictions his arthritis symptoms required except to state that he should be found totally disabled. As noted in the ALJ's decision, Plaintiff's counsel at the administrative level argued that the medical records reflect Plaintiff's "significant problems standing and walking secondary to pain." (Tr. at 16.) However, the ALJ correctly noted that Plaintiff was found to have a normal gait, muscle tone, and muscle strength throughout his treatment notes. (Tr. at 15, 16, 17.) In addition, as explained above, the ALJ found Plaintiff's hearing testimony that he could stand for 20 minutes and walk for 15 minutes less-than-fully-credible in light of his activities, which included shopping, cooking, helping care for his paralyzed mother, and walking his dog twce a day; the medical records, which included fairly benign physical findings as well as medication use that partially to fully controlled his symptoms; and the medical opinion evidence from Drs. Song and Gay, which supports the ALJ's conclusion that Plaintiff could perform light work with further limitations. Because the ALJ explained and relied on all of the preceding evidence in making the disability determination in the present case, substantial evidence supports that decision.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment [Doc. #15] be DENIED,

that Defendant's Motion for Judgment on the Pleadings [Doc. #16] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of February, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
